```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/12/2013

RHONDELESIA HERNANDEZ, :

             Petitioner, :

  - against - :

ELIZABETH WILLIAMS, :

             Respondent. :

------------------------------------------------------------x

**REPORT AND RECOMMENDATION TO THE HONORABLE ANDREW L. CARTER, JR.**[*]

10 Civ. 3073 (ALC) (FM)

**FRANK MAAS,** United States Magistrate Judge.

    Petitioner Rhondelesia Hernandez ("Hernandez") brings this habeas corpus proceeding, pursuant to 28 U.S.C. § 2254 ("Section 2254"), to challenge her conviction on one count each of Robbery in the First and Second Degrees following a jury trial in Supreme Court, New York County. On September 11, 2007, Justice Edwin Torres, before whom the case was tried, sentenced Hernandez, as a persistent violent felony offender, to concurrent terms of twenty years to life on both counts.

    In this proceeding, Hernandez asserts that she is entitled to habeas relief on the grounds that (a) the trial court improperly denied her request for substitute counsel,

---

[*]This Report and Recommendation was prepared with the assistance of Amanda K. Lui, a student at Brooklyn Law School.

1

(b) her adjudication and sentencing pursuant to the New York mandatory persistent felony offender statute was unconstitutional under Apprendi v. New Jersey, 530 U.S. 466 (2000), and (c) she was improperly sentenced as a predicate felony offender under New York's Persistent Violent Felony Offender Statute. (Hernandez Aff. 1-2).[1]

For the reasons set forth below, Hernandez's request for habeas relief should be denied. Additionally, because Hernandez has not made the substantial showing of the denial of a constitutional right required by 28 U.S.C. § 2253(c)(2), a certificate of appealability should not issue.

I.  Background

    A.  Trial

        1.  People's Case

The case against Hernandez arose out of a robbery on January 28, 2006, near 35th Street and First Avenue in Manhattan. The evidence at trial with respect to that robbery would have permitted a reasonable juror to find as follows:

On January 28, 2006, Hernandez entered a "Good Burger" restaurant located at 800 Second Avenue, near 43rd Street, in Manhattan. (T. 20-22). Hernandez

---

[1] "Pet." or "Petition" refers to Hernandez's original habeas petition. (ECF No. 2). "Hernandez Affidavit" or "Hernandez Aff." refers to Hernandez's Affidavit in Response to Respondent's Motion for More Definite Statement of Claims. (ECF No. 8). "T." refers to the state court trial transcript. (ECF No. 10). "S." refers to the minutes of Hernandez's sentencing. (ECF No. 10). "Ex." refers to the exhibits annexed to the Declaration of Assistant Attorney General Paul M. Tarr in Opposition to the Petition for Writ of Habeas Corpus. (ECF No. 12). "Resp't's Mem." refers to the Respondent's Memorandum of Law. (ECF No. 11).

2

ordered eight cups of soda from John McWalt Chapman ("Chapman"), the manager-cashier. (Id. at 23). She requested that the sodas be delivered to 225 East 40th Street and that the delivery person have change for a $100 bill. (Id. at 23-24, 26). Chapman dispatched a male employee named Isabel Hernandez ("Isabel") to accompany Hernandez with the delivery. (Id. at 24, 27).

While Hernandez and Isabel were walking to the delivery location, Hernandez stopped at a Dunkin' Donuts on 40th Street, ostensibly to make a purchase, but emerged empty handed a few minutes later. (Id. at 76-77). She then walked in the direction of a McDonalds on 39th Street with Isabel continuing to follow her on Second Avenue. (Id. at 77-78).

As Isabel walked down Second Avenue behind Hernandez, two unidentified males wearing baseball caps approached. (Id. at 77). Walking alongside Isabel, the men grabbed Isabel's arm, put a kitchen knife to his back, and took nearly $150 from his pockets. (Id. at 77-79, 82, 85-86). During the robbery, Hernandez remained a short distance in front of Isabel. (Id. at 79). She looked back repeatedly, but did not make eye contact, stop walking, or ask if Isabel needed assistance. (Id. at 79, 81, 84). Hernandez and the two men then fled in different directions. (Id. at 86-88). Isabel observed Hernandez attempting to hail a taxi cab before he ran back to the Good Burger. (Id. at 88).

At the restaurant, Isabel reported the incident to Chapman, who alerted the police. (Id. at 28-29, 88). Detective Christopher Kolenda ("Det. Kolenda") interviewed Chapman and Isabel and obtained four surveillance photographs of a female matching Hernandez's description from the Dunkin' Donuts. (Id. at 43-46).

On February 16, 2006 at 10:30 a.m., Det. Kolenda went to Hernandez's residence in Harlem. (See id. at 47). Det. Kolenda heard noises coming from the apartment, but when he knocked on the door, there was no answer. (Id. at 48-49). Subsequently, Det. Kolenda telephoned Hernandez, who claimed to be uptown and unable to return to her apartment. (Id. at 49-50). Approximately fifteen minutes after Det. Kolenda told Hernandez that he would remain at her residence until she returned, a man opened the door and let Det. Kolenda enter the living room. (Id. at 49-51). Two minutes later, Hernandez came out of a back room and voluntarily accompanied Det. Kolenda to the 17th Precinct. (Id. at 51). Later that day, Chapman identified Hernandez at the 17th Precinct during a line-up. (Id. at 55-59).

B.  Defense Case

Hernandez did not present a defense.

C.  Verdict and Sentencing

On July 5, 2007, after brief deliberations, the jurors found Hernandez guilty on both counts presented for their consideration. (Id. at 199). Thereafter, Justice Torres imposed sentence on September 11, 2007. At the outset of that proceeding, the

4

prosecution filed an information which charged that Hernandez had two prior violent felony convictions: a 1993 conviction for Attempted Robbery in the First Degree ("1993 Conviction"), and a 1999 conviction for Attempted Robbery in the Second Degree ("1999 Conviction"). (S. 3-4). Hernandez admitted the convictions, but stated that she wanted to have a hearing as to whether the convictions were constitutionally obtained. (Id. at 5-6). Her attorney, Brian Konoski ("Mr. Konoski") conceded, however, that he had no "legal basis in any of [his] records to challenge any of the information in [the] persistent felony [offender] statement." (Id. at 6). Justice Torres consequently denied the request for a hearing, but noted that Hernandez could raise the issue "in writing later on after sentence." (Id.). The Justice then sentenced Hernandez, as a persistent violent felony offender, to concurrent prison terms of twenty years to life. (Id. at 14).

### D. Pretrial Proceedings

On March 16, 2007, approximately three months before trial, Hernandez filed a pro se "Motion for Reassignment of Counsel." (Ex. N). The affidavit in support of that motion, which consisted almost entirely of boilerplate, stated that Hernandez "lacked confidence in counsel's ability to represent [her]" and that there allegedly was an "existing conflict" between her and Mr. Konoski. (Id. Aff. ¶ 4). Hernandez further alleged through boilerplate that Mr. Konoski failed to render adequate counsel by failing to (a) "provide legal advice and guidance," (b) "inform [her] of any pertinent motions," or (c) "conduct [an] investigation in the matter of the action." (Id. ¶ 5). Indeed, the only

5

information specific to the pending case that Hernandez provided was Mr. Konoski's name and the date he was appointed to represent her.

In response to the motion, Mr. Konoski filed an affirmation in which he did not oppose Hernandez's application, but stated that her assertions were "inaccurate" and that he was not so burdened by other work that he lacked the time necessary to devote to her case. (Ex. O). Mr. Konoski noted that he had sent Hernandez four letters during the course of his representation, one of which contained an "entire copy" of her file. (Id. ¶ 5). Mr. Konoski further noted that he was appointed to represent Hernandez in August 2006 after she requested that her prior counsel be relieved. (Id. ¶ 18).

On April 24, 2007, the court denied Hernandez's motion, stating to Mr. Konoski, "I told Miss Hernandez when you were appointed that you were the last attorney she got. As far as I'm concerned you're doing a fine job for her." (Ex. A at 7). After the court ruled, Mr. Konoski noted that he had received a message from Hernandez indicating that she wanted to withdraw her motion "regardless of what the . . . decision is." (Id.). When Mr. Konoski then asked Hernandez on the record whether that was correct, Hernandez responded "Yes." (Id.).

II.   Post-Trial Proceedings

   A.   Direct Appeal

In her direct appeal, Hernandez raised two claims, asserting that (1) the trial court had improperly refused to replace Mr. Konoski after Hernandez submitted her motion for substitute counsel, and (2) her adjudication and sentencing pursuant to New

6

York's mandatory persistent felony offender statute was unconstitutional under <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000). (See <u>id.</u>).

On May 5, 2006, the Appellate Division unanimously affirmed Hernandez's conviction. <u>People v. Hernandez.</u>, 878 N.Y.S.2d 722 (1st Dep't 2009). Rejecting Hernandez's Sixth Amendment claim, the court held that, "[s]ince defendant withdrew her request for a new attorney, she waived her present claim that the court should have assigned new counsel." (Ex. C at 1). The court noted further that there was "no support in the record" for her argument that counsel induced her to withdraw her motion. (<u>Id.</u>). Finally, the court observed that even if Hernandez had not withdrawn her claim, there was no basis for reversal since Mr. Konoski had responded "appropriately" to her motion and did not "demonstrate any inability to continue providing effective assistance." (<u>Id.</u> at 2).

Turning to Hernandez's claim that her adjudication and sentencing under the New York mandatory persistent felony offender statutes violated <u>Apprendi</u>, 530 U.S. 466, the Appellate Division found that the issue was unpreserved and "decline[d] to review it in the interest of justice." (<u>Id.</u>). The court also noted, as "an alternative holding," that the claim was "without merit." (<u>Id.</u> at 2-3).

On May 29, 2009, Hernandez sought leave to appeal to the Court of Appeals. (Ex. D). On September 18, 2009, Judge Susan Phillips Read of that court summarily denied the application. (Ex. F).

B.  Motion to Set Aside The Conviction

On October 20, 2008, pursuant to Section 440.20 of the New York Criminal Procedure Law ("CPL"), Hernandez's assigned appellate counsel moved to set aside the five-year sentence arising out of Hernandez's 1999 Conviction due to the sentencing court's alleged failure to comply with CPL § 400.15, which specifies the procedures that must be followed when sentencing a defendant who may be a second violent felony offender. (Ex. G). CPL § 400.15(7)(b) provides, in that regard, that a prior conviction may not be counted if it was obtained unconstitutionally. The statute further affords the defendant the right to contest a conviction on that basis "at any time during the hearing." In her motion, Hernandez claimed that she was "[im]properly adjudicated as a second predicate offender because she did not receive an opportunity to articulate her challenge to [the] constitutionality of her prior conviction and the Court never determined whether [she] was subjected to a predicate felony conviction." (Ex. G at 1).

In a Decision and Order dated May 18, 2009, Acting Justice John Cataldo denied Hernandez's motion, concluding that her sentence was "legally imposed." (Ex. J at 3). In arriving at this determination, the court noted that there was "substantial compliance with CPL § 400.15" and that Hernandez neither "contended that she was not the person convicted of the underlying 1993 predicate felony" nor "set forth any constitutional challenge to that underlying conviction." (Id. at 3-4). The court further noted that when Justice Torres sentenced Hernandez in 2007, she admitted the allegations

8

of the persistent violent felony offender statement – which was based on both the 1999 Conviction and the 1993 Conviction underlying her 1999 adjudication as a second violent felony offender. (Id. at 4-5).

On June 12, 2009, Hernandez sought leave to appeal the denial of her CPL § 440.20 motion. (Ex. K). On July 21, 2009, the Appellate Division denied her application. (Ex. M).

    C.    Habeas Petition

Hernandez's original Petition is dated February 12, and was received by the Pro Se Office of this Court on February 28, 2010. (ECF No. 2 at 1, 6). In her Petition, rather than setting forth any factual or legal basis for relief, Hernandez simply referred the Court to "exhibit[s] 10-19," which were not attached. (Pet. at 4). Accordingly, on June 22, 2010, the Respondent moved pursuant to Rule 12(e) of the Federal Rules of Civil Procedure for a more definite statement of Hernandez's claims. After the Court granted that motion, (see ECF No. 7), Hernandez filed an affidavit on August 5, 2010, which detailed her three claims. (ECF No. 8). Thereafter, on October 10, 2010, Judge Batts, to whom the case was then assigned, referred this proceeding to me for a Report and Recommendation. (ECF No. 13).

III.    Discussion

    A.    Exhaustion

The Respondent contends that Hernandez's claim that she was improperly sentenced as a predicate felony offender under New York's Persistent Violent Felony Offender Statute is unexhausted and procedurally barred because Hernandez failed to

9

raise her constitutional claim on direct appeal and "no longer has an available state forum in which to raise it." (Resp't's' Mem. at 29-30). Even if an avenue of review were still available in state court, a district court may deny a claim on the merits on habeas review despite a petitioner's failure to exhaust it fully. See 28 U.S.C. § 2254(b)(1)(A). Accordingly, in this Report and Recommendation, I will address all three of Hernandez's claims.

B.   Standard of Review

A habeas corpus petition is not a vehicle to relitigate every issue previously determined in state court. Herrera v. Collins, 506 U.S. 390, 401 (1993). Rather, a state petitioner seeking habeas relief must show "that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petitioner bears the burden of proving, by a preponderance of the evidence, that his rights have been violated. Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997).

Section 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides in part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

28 U.S.C. § 2254(d)(1) (emphasis added).

As the Second Circuit noted in Jones v. Stinson, the Supreme Court has "construed the amended statute so as to give independent meaning to 'contrary [to]' and 'unreasonable.' Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." 229 F.3d 112, 119 (2d Cir. 2000) (citing Williams v. Taylor, 529 U.S. 362, 412-413 (2000)). Under the "unreasonable application" clause, a federal habeas court should "ask whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. This standard does not require that reasonable jurists would all agree that the state court was wrong. Id. at 409-10. Rather, the standard "falls somewhere between 'merely erroneous and unreasonable to all reasonable jurists.'" Stinson, 229 F.3d at 119 (quoting Francis S. v. Stone, 221 F.3d 100, 109 (2d Cir. 2000)).

Section 2254(d)(2) further authorizes the federal courts to grant a petition for a writ of habeas corpus when a claim considered on the merits in state court "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Finally, to the extent that a habeas petition challenges factual findings, Section 2254(e)(1) provides that "a determination of a factual issue by a State court shall be presumed to be correct" and that "[t]he [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

11

"If, after carefully weighing all the reasons for accepting a state court's judgment, a federal court is convinced that a prisoner's custody . . . violates the Constitution, that independent judgment shall prevail." Williams, 529 U.S. at 389.

### C.  Merits of Hernandez's Claims

#### 1.  Refusal to Appoint Substitute Counsel

Hernandez first argues that she was deprived of the effective assistance of counsel because the trial court refused to appoint substitute counsel despite her submission expressing a lack of confidence in her existing counsel. (See Hernandez Aff. at 1; Ex. A at 16). In Hernandez's view, when Mr. Konoski refuted her allegations regarding the sufficiency of his services, he created an "irreconcilable" conflict which mandated the substitution of a new attorney. (Hernandez Aff. at 2). It appears that Hernandez thus is alleging that Mr. Konoski was laboring under an actual conflict of interest.

As the Second Circuit has noted, an "actual conflict occurs 'when during the course of the representation, the attorney's and defendant's interest diverge with respect to a material factual or legal issue or to a course of action.'" United States v. John Doe No. 1, 272 F.3d 116, 126 (2d Cir. 2001) (quoting Armienti v. United States, 234 F.3d 820, 824 (2d Cir. 2000)). Such a conflict "violate[s] the Sixth Amendment when counsel's representation of the client is 'adversely affect[ed]' by the existence of the conflict." Ventry v. United States, 539 F.3d 102, 111 (2d Cir. 2008) (quoting United States v. Williams, 372 F.3d 96, 102 (2d Cir. 2004)).

12

Assuming, arguendo, that there was an actual conflict, the state court found that Hernandez had waived the conflict and that there was no basis for her claim that Mr. Konoski had improperly "influenced her to withdraw her motion." Hernandez, 878 N.Y.S.2d at 722. To set aside these factual findings, Hernandez would have to adduce clear and convincing evidence that the state court was wrong. 28 U.S.C. § 2254(e)(1). In her papers, however, Hernandez has not introduced any evidence – much less clear and convincing evidence – that she had not voluntarily withdrawn her request that Mr. Konoski be relieved of any further duties as her counsel. In any event, even if Hernandez were able to show that she did not voluntarily withdraw her claim, to prevail in this forum on the basis of an actual conflict of interest, Hernandez would have to show that the conflict adversely affected her counsel's performance. See LoCascio v. United States, 395 F.3d 51, 56 (2d Cir. 2005). Here, there has been no such showing. Indeed, despite the filing of both a direct appeal and a motion for collateral relief, Hernandez has yet to allege that Mr. Konoski's performance at trial or in connection with sentencing was lacking in any way. In the absence of a showing that Mr. Konoski's performance was adversely affected, Hernandez cannot prevail on her claim, even if Mr. Konoski had an actual conflict of interest once he contested the allegations in her boilerplate affidavit.

2. New York's Persistent Felony Offender Statute

Hernandez next challenges the trial court's adjudication and sentencing of her as a persistent violent felony offender, arguing that it violated Apprendi. (Hernandez Aff. at 2). In that case, the Supreme Court considered the constitutionality of a New

13

Jersey statute that allowed a sentence to be enhanced if a crime was committed "with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity." 530 U.S. at 469 (quoting N.J. Stat. Ann. § 2C:44-3(e)). Reasoning that the increased sentence permissible in such circumstances was "the functional equivalent of an element of a greater offense," the Court held that a jury – rather than a judge – had to make the factual determination necessary to impose the greater sentence. Id. at 494 n.19, 497. As the Court explained, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490-91 (emphasis added); see also United States v. Booker, 543 U.S. 220, 244 (2005) (reaffirming Apprendi).

The State of New York has two statutory provisions relating to the sentencing of persistent felony offenders: the persistent felony offender statute, New York Penal Law ("PL") § 70.10, and the persistent violent felony offender statute, PL § 70.08. The first of these statutes, not directly implicated here, contains two sections. The first section defines a persistent felony offender as someone who previously has been convicted of two or more felonies. Id. § 70.10(1). Assuming that a defendant qualifies as a persistent felony offender, the second section permits the court to impose any sentence authorized for an "A-1" felony, provided that the court makes a finding that "the history and character of the defendant and the nature and circumstances of his criminal conduct

indicate that extended incarceration and life-time supervision will best serve the public interest." Id. § 70.10(2).

Although the New York Court of Appeals has concluded that the persistent felony offender statute is constitutional notwithstanding Apprendi, see People v. Rivera, 5 N.Y.3d 61 (2005), cert. denied, 546 U.S. 984 (2005); People v. Rosen, 96 N.Y.2d 329 (2001), cert. denied, 534 U.S. 899 (2001), district judges in the Southern and Eastern Districts of New York reached divergent conclusions with respect to this issue. Compare Washington v. Poole, 507 F. Supp. 2d 342, 358-59 (S.D.N.Y. 2007) (PL § 70.10 violates the Apprendi rule); Portalatin v. Graham, 478 F. Supp. 2d 385, 406 (E.D.N.Y. 2007) (same), with West v. Breslin, No. 06 Civ. 4167 (PKC), 2008 WL 110947, at *8 (S.D.N.Y. Jan. 2, 2008) (PL § 70.10 is constitutional); Morris v. Artus, 06 Civ. 4095 (RWS), 2007 WL 2200699, at *9 (S.D.N.Y. July 30, 2007) (same); Phillips v. Artus, No. 05 Civ. 7974 (PAC), 2006 WL 1867386, at *6 (S.D.N.Y. June 30, 2006) (same). This debate was put to rest several years ago when the Second Circuit ruled en banc that the New York decisions upholding the constitutionality of the New York persistent felony offender statute did not unreasonably apply established Supreme Court precedent. See Portalatin v. Graham, 624 F.3d 69, 90-91 (2d Cir. 2010), cert. denied, 131 S. Ct. 1693 (2011).

In this case, Hernandez was not sentenced as a persistent felony offender under PL § 70.10. Rather, she was sentenced as a persistent violent felony offender under PL § 70.08. Unlike PL § 70.10, PL § 70.08 does not require a two-step analysis before imposing an enhanced sentence. Thus, the statute simply provides (insofar as relevant)

15

that a person who is convicted of a violent felony, after having previously been convicted of two or more predicate violent felonies, is a persistent violent felony offender. PL §§ 70.08(1)(a)-(b). The statute further defines the terms "violent felony" and "predicate violent felonies." Id. § 70.08(1)(a) (referencing id. §§ 70.02(1), 70.04(1)(b)). Also, unlike the persistent felony offender statute, the persistent violent felony offender statute provides that persons who are persistent violent felony offenders must be given indeterminate sentences with mandatory minimum terms. Id. §§ 70.08(2), (3).

In light of these differences, and Portalatin, the federal district courts considering the issue have unanimously concluded that the New York persistent violent felony offender statute is constitutional. See, e.g., Kelly v. Griffin, No. 12 Civ. 3384 (BMC), 2012 WL 6569769, at *6 (E.D.N.Y. Dec. 14, 2012); Ferguson v. Walsh, No. 09 Civ. 1575 (DLI), 2011 WL 1527973, at *7 (E.D.N.Y. Apr. 20, 2011); Oree v. Conway, No. 10 Civ. 4346 (DLC) (AJP), 2011 WL 710602, at *14 (S.D.N.Y. Mar. 1, 2011) (collecting cases); Soto v. Conway, 565 F. Supp. 2d 429, 440 (E.D.N.Y. 2008); Stewart v. New York, No. 04 Civ. 4426 (RJD), 2008 WL 2566379, at *4 (E.D.N.Y. June 26, 2008); Mitchell v. Artus, No. 07 Civ. 4688 (LTS) (AJP), 2008 WL 2262606, at *39 (S.D.N.Y. June 2, 2008), reporMarch 12, 2013t and recommendation adopted by 2008 WL 3884373 (S.D.N.Y. Aug. 21, 2008); Solomon v. Greene, No. 05 Civ. 10894 (RJS), 2008 WL 2018207, at *6 (S.D.N.Y. May 7, 2008); Alexander v. Ercole, No. 06 Civ. 3377 (JG), 2007 WL 922419, at *7 (E.D.N.Y. Mar. 27, 2007).

16

There consequently is no basis for Hernandez's claim that <u>Apprendi</u> requires that her sentence be set aside.

### 3. Predicate Felony Offender Sentence

Hernandez's final claim is that her sentence should be set aside because the judge who sentenced her in 1999 failed to comply with the procedural requirements of CPL § 400.15. (Hernandez Aff. at 2). Specifically, Hernandez contends that she was not afforded an opportunity in 1999 to challenge the constitutionality of her 1993 Conviction, and that the court never expressly determined whether she was subject to a predicate felony conviction. (<u>Id.</u>).

Hernandez's procedural claim fails for at least two reasons. First, no matter what may have occurred in 1999, during the 2009 sentencing in this case, after the prosecutor filed the persistent violent felony offender information, Hernandez admitted that she was the person who was the subject of both the 1999 and the 1993 Convictions. (S. 5-6). Additionally, although she expressed an interest in challenging the constitutionality of both of her prior convictions, Mr. Konoski conceded that he had no "legal basis" for doing so. (<u>Id.</u>). Indeed, despite Justice Torres' invitation to explain any shortcoming in writing after the sentencing, Hernandez has yet to explain – much less show – that either of her two prior convictions was unconstitutional. Any failure to follow the dictate of the CPL in 1999 therefore did not deprive Hernandez of any constitutional right.

17

In any event, in <u>Lackawana County District Attorney v. Coss</u>, the Supreme Court held that

> once a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid . . . . If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained.

532 U.S. 394, 403-04 (2001). The Supreme Court recognized only one exception to this rule, which arises in the unique circumstance where the state court fails to appoint counsel for an indigent defendant in violation of <u>Gideon v. Wainwright</u>, 372 U.S. 335 (1963). <u>Id.</u> at 404.

In this case, it is clear that Hernandez's time to challenge the 1999 Conviction through a direct appeal expired long ago. <u>See</u> CPL § 460.10(1)(a) (notice of appeal must be filed within thirty days of sentencing). Hernandez also was unsuccessful in her attempt to set aside her sentence with respect to that conviction on collateral review. (Ex. J). Finally, it is clear that Hernandez was represented by counsel during both her guilty plea and her sentencing regarding the 1999 Conviction. (<u>See</u> Ex. G). In these circumstances, this Court, pursuant to <u>Coss</u>, cannot entertain the procedural challenge that Hernandez now belatedly seeks to bring with respect to that conviction.

IV.     Conclusion

For the foregoing reasons, Hernandez's habeas petition should be denied. Furthermore, because Hernandez has not made the substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(2), a certificate of appealability should not issue.

V.      Notice of Procedure for Filing of Objections to this Report and Recommendation

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a) and (d). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Andrew L. Carter, Jr. and to the chambers of the undersigned at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Carter. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

Dated:      New York, New York
            March 12, 2013

                                        _____
                                        FRANK MAAS
                                        United States Magistrate Judge

Copies to:

Honorable Andrew L. Carter, Jr.
United States District Judge

Rhondelesia Hernandez (via U.S. Mail)
07-G-1087
Bedford Hills Correctional Facility
PO Box 1000
Bedford Hills, New York 10507-2499

Respondent's counsel (via ECF)